DEPARTMENT OF HUMAN SERVICES *ex rel.* Tamara
D. DAVIS *v.* Steve SEAMSTER

CA 91-107                                           820 S.W.2d 298

Court of Appeals of Arkansas
En Banc
Opinion delivered December 18, 1991

*G. Keith Griffith*, for appellant.

*Eddie N. Christian*, for appellee.

ELIZABETH W. DANIELSON, Judge. This case presents the

question of whether a paternity action brought by the Department of Human Services on behalf of a child born out of wedlock is barred by the doctrine of *res judicata* or collateral estoppel after a previous paternity action brought by the mother, without joining the child as a party, resulted in a finding of non-paternity. We attempted to certify this case to the Arkansas Supreme Court under Supreme Court and Court of Appeals Rule 29(4)(b) as one involving an issue of significant public interest, but certification was refused.

Tamara Davis was born out of wedlock to Pamela Davis on April 12, 1978. Pamela Davis brought an action against Steve Seamster in the Sebastian County Court, alleging that he was Tamara's father. On May 15, 1979, the county judge denied Pamela's complaint and found that she had failed to establish that appellee was the father of the child. From this judgment, which is included in the record in this appeal, it is apparent that Tamara was not a party to the action.

On March 13, 1990, the Department of Human Services, *ex rel*. Tamara Davis, brought a complaint against appellee, seeking support for Tamara and a declaration that appellee is Tamara's father. In his answer, appellee affirmatively pled *res judicata*, relying on the 1979 judgment by the Sebastian County Court.

In a letter opinion dated November 6, 1990, the chancellor stated:

> It is obvious to me that the issue of whether or not Steve Seamster is the father of Tamara Davis has been litigated, regardless of the parties in the suit. Accordingly, the Court finds that the issue of paternity of Tamara Davis has been adjudicated and that this matter is now res judicata.

An order finding that this issue is *res judicata* was entered on November 27, 1990. From that order, comes this appeal.

In its brief, DHS argues that *res judicata* should not bar this action because Tamara and DHS were not parties or in privity with parties to the previous county court action. DHS also argues that Tamara's interests in establishing paternity are not identical with those of her mother. Appellee argues that this case simply raises the same issue litigated before and that the doctrine of *res*

*judicata* should apply even if the parties are not the same or in privity with the parties in the 1979 action.

■ Under the doctrine of *res judicata*, a valid and final judgment rendered on the merits by a court of competent jurisdiction bars another action by the plaintiff or his privies against the defendant or his privies on the same claim or cause of action. *Toran* v. *Provident Life & Accident Ins. Co.*, 297 Ark. 415, 419, 764 S.W.2d 40, 42 (1989). The doctrine of collateral estoppel or issue preclusion bars the relitigation of issues of law or fact actually litigated by the parties in the first suit. *Id.*

■■ It has been generally recognized that a husband and wife are estopped from later raising paternity as an issue where there has been a prior paternity determination in a divorce or annulment decree. *See Benac* v. *State*, 34 Ark. App. 238, 239, 808 S.W.2d 797, 798-99 (1991). In *McCormac* v. *McCormac*, 304 Ark. 89, 90-91, 799 S.W.2d 806, 807 (1990), the supreme court held that a mother could not, following a divorce decree awarding custody of a child, fixing child support, and setting visitation rights, relitigate the issue of paternity. Therefore, there is no question that, in the courts of this state, the parents of the child are bound by the doctrine of *res judicata* when the issue of paternity has been litigated in a prior action between them. On the other hand, it has been held that a finding in regard to a child's paternity in a divorce or annulment proceeding is not binding on the child in any subsequent action unless the child was a party to the prior proceeding. *See Shatford* v. *Shatford*, 214 Ark. 612, 217 S.W.2d 917 (1949).

Arkansas Code Annotated § 9-10-104 (Repl. 1991) provides that a petition for establishment of paternity may be filed by (1) a biological mother; (2) a putative father; (3) a person for whom paternity is not presumed or established by court order; or (4) the Arkansas Department of Human Services. This statute, however, was not in effect when Pamela Davis brought the first action against appellee to establish his paternity of Tamara. In that action, Pamela complied with the law then in effect by filing the complaint as provided by Ark. Stat. Ann. § 34-702 (Repl. 1962) which required the mother of the child to make the complaint. Under Ark. Stat. Ann. § 34-704 (Repl. 1962), the action could be revived in the name of the child if the mother died before the final

order. The paternity statutes then in effect did not otherwise provide for the child to be listed as a named plaintiff. Nevertheless, there was no doubt that such an action was brought on behalf of the child:

> The statutes recognize only one fundamental reason for a bastardy action, the recovery of support money for the infant. In some instances the mother might not see fit to bring an action at once; she might, for instance, be self-supporting. But the child is the real party in interest and should not be deprived of needed support by the mother's failure to bring an action.

*Dozier* v. *Veasley*, 272 Ark. 210, 211, 613 S.W.2d 93, 94 (1981).

Hence, Pamela brought the original paternity action against appellee in compliance with the statutes then in effect. It is also clear that she brought that action to obtain support for Tamara. We therefore cannot say that the chancellor erred in finding this action, which was also brought to obtain support for Tamara, to be barred by *res judicata. See Guziejka* v. *Desgranges*, 571 A.2d 32 (R.I. 1990); *T.R.* v. *A.W.*, 470 N.E.2d 95 (Ind. Ct. App. 1984).

We point out, however, that the paternity statutes have been extensively rewritten since 1979 and that the statutes currently in effect specifically provide that paternity actions may be filed by the child as a named party. The current statutes also recognize that, in some instances, the child's rights in such matters may be different from those of the mother. Accordingly, our decision in the case at bar necessarily applies only to paternity determinations made under the statutes in effect when the 1979 decision was rendered.

Affirmed.

MAYFIELD, J., concurs.