Tracie Loudon CARTER *v.* Cary REDDELL

CA 00-1473                                               52 S.W.3d 506

Court of Appeals of Arkansas
Division III
Opinion delivered August 29, 2001

*Skelton & Clark,* by: *William Douglas Skelton* and *Kristin Clark,* for appellant.

*Ramey Law Firm, P.A.,* by: *Jerry Don Ramey,* for appellee.

WENDELL L. GRIFFEN, Judge. Tracie Loudon Carter appeals from a chancery court order changing the surname of her minor daughter to that of the child's father. She argues that the father failed to present any compelling facts to show that it would be in the child's best interest to change her name. We disagree and affirm the chancellor's order.

Appellant and appellee Cary Reddell had one child, Merritt Ann Loudon, in August 1996. In September 1996, the parties entered an agreed judgment of paternity that acknowledged appellee as Merritt's father, awarded custody to appellant, set forth the level of appellee's child support obligation, and ordered that the Bureau of Vital Statistics correct Merritt's birth certificate to indicate appellee as her father. However, the agreed judgment of paternity did not order specific visitation or change Merritt's last name.

Visitation was conducted by mutual agreement from 1996 to July 2000, at which time appellee filed a petition requesting that the

court grant him standard visitation and that Merritt's last name be changed from Loudon to Reddell. Appellant objected to the order and requested that Merritt's child support be increased. A hearing on the matter was held on September 14, 2000. Appellant and appellee were the only witnesses who testified. Appellant moved for a directed verdict on the issue of the name change on the basis that appellee failed to prove that the name change would be in the child's best interest. She also argued that appellee failed to offer evidence to support any of the six factors enunciated in *Huffman v. Fisher*, 337 Ark. 58, 987 S.W.2d 269 (1999), which a court must consider when determining whether a name change is in the child's best interest. The chancery judge denied the motion.

In a letter opinion issued September 14, 2000, the chancery judge ordered that appellee receive standard visitation, that child support would be awarded as requested, and that Merritt's last name be changed to Reddell. The chancellor listed the *Huffman* factors, and stated that in considering those factors, it was in Merritt's best interest that her last name be changed. The chancellor subsequently entered an order to that effect on October 4, 2000. This appeal followed.

■■ Appellant raises two points on appeal, but each relates to the sufficiency of the evidence. She argues that the chancellor's finding was clearly erroneous because appellee failed to present any compelling facts to show that a name change would be in Merritt's best interest. The best interest of the child is the dispositive consideration in determining whether a child's surname should be changed. *See Huffman v. Fisher, supra.* Where a full inquiry is made by the chancellor regarding the implication of these factors and a determination is made with due regard to the best interest of the child, the chancellor's decision will be upheld where it is not clearly erroneous. *See Huffman v. Fisher, supra.* A finding is clearly erroneous when, although there is evidence to support it, upon reviewing the entire evidence, the court is left with a definite and firm conviction that a mistake has been committed. *See Huffman v. Fisher, supra.*

■■ Pursuant to *Huffman*, the moving party has the burden to demonstrate that a change is in the best interest of the child. In making this determination, the trial court should take the following six factors into consideration: 1) the child's preference; 2) the effect of the change of the child's surname on the preservation and development of the child's relationship with each parent; 3) the length of time the child has borne a given name; 4) the degree of community

respect associated with the present and proposed surnames; 5) the difficulties, harassment, or embarrassment that the child may experience from bearing the present or proposed surname; and 6) the existence of any parental misconduct or neglect. *Id.* at 68, 987 S.W.2d at 274.

Appellant asserts that appellee offered no testimony during the presentation of his case regarding these six factors. She maintains that he merely asked the court to change Merritt's last name. We disagree with appellant's characterization of appellee's testimony and hold that the chancellor was presented with sufficient testimony regarding the *Huffman* factors.

Appellee conceded that there was no provision for a name change in the agreed order of paternity. He testified that he has visited regularly with Merritt since she was born, although the duration of the visits has varied. His testimony in this regard was confusing, but apparently his visitation with Merritt has graduated from an overnight stay every two to three weeks to every other Saturday from 9:00 a.m. to 6:00 p.m. to regular weekend visits from Friday night until Sunday morning. Appellee stated that visitation has largely been determined by appellant and that she would not allow Merritt to visit him if appellant was upset with him.

Appellee also testified that Merritt was familiar with him and his family. He stated that visitation took place either at his house, his fiancé's house, or his parents' house. He stated he was capable of providing a clean and loving environment for her. Appellee said that Merritt loved staying with him and asked to stay the night when there was no overnight visitation allowed. Appellee pays for Merritt's health insurance. He testified that he had regularly paid child support and would agree to paying an increased amount of child support.

Appellant also testified. She is married to Jason Carter but indicated that she had no intention to have Merritt use Carter as her last name. She did not object to appellee's visitation or to Merritt staying overnight with his parents. However, she objected to changing Merritt's last name. She stated that she and appellee were no longer dating when she discovered that she was pregnant. She testified that appellant signed his name on Merritt's birth certificate, without objection, when that certificate reflected Merritt's last name as Loudon. However, appellant admitted that at that time, appellee also asked when Merritt's last name would be changed to

Reddell and she told him that Merritt's last name would be Loudon.

■ We hold that the chancellor did not err in finding that it was in Merritt's best interest to change her surname to Reddell. Arkansas Code Annotated section 20-18-401(f)(3) (Repl. 2000) provides that where paternity of a child is determined by a court of competent jurisdiction, the name of the father and the surname of the child shall be entered on the certificate of birth in accordance with the finding and order of the court. However, this statute does not require that a child's surname be changed to that of the child's father. *See McCullough v. Henderson*, 304 Ark. 689, 804 S.W.2d 368 (1991).

Appellant appears to rely on *Reaves v. Herman*, 309 Ark. 370, 830 S.W.2d 860 (1992), in which our supreme court held that there must be compelling facts to show that it is in the best interest of the child to change his surname. She argues that there are no compelling facts here. However, this standard was subsequently modified by the Arkansas Supreme Court in *Huffman v. Fisher*, 337 Ark. 58, 987 S.W.2d 269 (1999), where the court stated the proper question on appeal is whether the party has demonstrated that such a change is in the best interest of the child, considering the *Huffman* factors previously noted.

Despite appellant's assertion, there was sufficient evidence presented pertaining to the *Huffman* factors. The factors that are most relevant in this case are the length of time that Merritt has borne her given name; the effect of the change of her surname on the preservation and development of her relationship with each parent; and the difficulties, harassment, or embarrassment that she may experience from bearing the present or proposed surname.

■ It does not appear from the evidence that the name change will affect Merritt's relationship with either parent. Each parent has established a bond with her since birth and that is unlikely to change based on the surname she uses. Thus, the dispositive factors in this case are those relating to the stigma or benefit to Merritt in changing her surname. Merritt was four years old at the time of the hearing and was registered to attend kindergarten at Montessori School. Although she has borne the Loudon name for four years, it appears that there would be very little stigma attached if she changes her last name now, at the beginning of her school attendance, where her classmates will subsequently know her as Reddell.

In addition, appellant's primary reason for objecting to the name change appeared to be that she desired Merritt's name to be the same as her maiden name, because she was not married when Merritt was born. However, appellant has since remarried and has legally changed her last name to Carter. She testified that she has no plans to change Merritt's last name to Carter. Merritt has no siblings; therefore, she is the only person in her immediate family known as Loudon. Moreover, her father's name will not change; thus, until she marries, Merritt will always have the same last name as one of her parents if she adopts her father's surname. *See Clinton v. Morrow*, 220 Ark. 377, 247 S.W.2d 1015 (1952) (affirming where chancellor found it was in the best interest of children to change their surname from their biological father's name to their mother's married surname to avoid confusion and embarrassment at school). Therefore, we hold that the chancellor did not err in finding that it was in Merritt's best interest to change her surname.

In addition, we note that the other relevant evidence in this case supports the chancellor's finding. The chancellor has the discretion to consider other relevant factors in addition to the *Huffman* factors when determining what surname would be in the best interest of the child. *See, e.g., Bell v. Wardell*, 72 Ark. App. 94, 34 S.W.3d 745 (2000). In addition to the *Huffman* factors, the chancellor in *Bell* considered the fact that the father filed a paternity action only nineteen days after the child was born, that he offered to pay child support and medical expenses, and that he and his mother have sought visitation with the child. *See Bell, supra.* Similarly here, the other factors that support the chancellor's finding in this case are that appellant voluntarily acknowledged paternity shortly after Merritt's birth and expressed an interest at that time that Merritt's name be Reddell; he and his family have exercised visitation as regularly as appellant has allowed; he has paid child support and agreed to pay increased child support when requested; and he pays for Merritt's health insurance.

On these facts, we hold that the chancellor did not err in determining that it was in Merritt's best interest to change her surname to reflect that of her father, Reddell.

Affirmed.

ROBBINS and CRABTREE, JJ., agree.